IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT IN AND FOR DUVAL
COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO. 2018-CA-006291

U.S. BANK NATIONAL ASSOCIATION
     Plaintiff,

vs.

UNKNOWN TRUSTEE OF THE 2212
SOTTERLEY LANE LAND TRUST, et al.
     Defendant(s).

_____/

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

    **COMES NOW** the Plaintiff, by and through its undersigned Counsel, and pursuant to Florida Rule of Civil Procedure 1.190 files this Motion for Leave to File Amended Complaint and in support thereof would state:

    1.   After filing its Complaint, Plaintiff determined that SHORELINE HOAS, LLC AS TRUSTEE OF THE 2212 SOTTERLEY LANE LAND TRUST needs to be named in the above-styled foreclosure action in order that equitable title pass at the conclusion of the foreclosure sale.

    2.   Leave of Court to amend the Complaint is required as Defendant has filed a responsive pleading to the original Complaint.

    3.   Pursuant to Florida Rule of Civil Procedure 1.190, and supported by well-grounded public policy, "Leave of court shall be freely given when justice so requires."

    4.   This Motion is being filed in the interest of justice and will in no way prejudice the Defendants in this action.

    5.   Plaintiff has attached hereto as Exhibit "A" the proposed Amended Complaint.

18-185101

ACCEPTED: DUVAL COUNTY, RONNIE FUSSELL, CLERK, 08/28/2019 08:51:43 AM

6.    Plaintiff prays that an Order be entered granting leave to amend the Complaint and that any previously entered defaults shall stand since the issues as to said Defendant(s) remain the same as in the Original Complaint.

**WHEREFORE**, Plaintiff prays for relief in an Order granting Plaintiff leave to file the Amended Complaint attached as Exhibit "A" and further deeming that document to be the Amended Complaint filed in this action.

> ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
> Attorney for Plaintiff
> 6409 Congress Ave., Suite 100
> Boca Raton, FL 33487
> Telephone: 561-241-6901
> Facsimile: 561-997-6909
> Service Email: mail@rasflaw.com
>
> By: _____
> Kelly E. McGuire, Esquire
> Florida Bar No. 28123
> Communication Email: k.mcguire@rasflaw.com
>
> Wendy Manswell, Esq.
> FL Bar No. 12027

PAGE 2

## CERTIFICATE OF SERVICE

**I hereby certify that** a copy of the Motion for Leave to File Amended Complaint has been furnished to the parties listed on the attached service list via Mail and/or E-Mail in accordance with the corresponding addresses listed therein on this _26_ day of _August_____, 2019.

> ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
> Attorney for Plaintiff
> 6409 Congress Ave., Suite 100
> Boca Raton, FL 33487
> Telephone: 561-241-6901
> Facsimile: 561-997-6909
> Service Email: mail@rasflaw.com
>
> By: _____    Wendy Manswell, Esq.
>                                FL Bar No. 12027
> Kelly E. McGuire, Esquire
> Florida Bar No. 28123
> Communication Email: k.mcguire@rasflaw.com

## SERVICE LIST

KRISTEN SHEREE HAMPTON
3199 CHESNUT RIDGE WAY
ORANGE PARK, FL 32065

RODNEY ADAM HAMPTON
3199 CHESTNUT RIDGE WAY
ORANGE PARK, FL 32065

UNKNOWN BENEFICIARIES OF THE 2212 SOTTERLEY LANE LAND TRUST
2212 SOTTERLEY LN
JACKSONVILLE, FL 32220

ROSANNE P. PERRINE, ESQ.
ATTORNEY FOR PRITCHARD POINT PROPERTY OWNERS ASSOCIATION, INC. F/K/A
PRITCHARD PLANTATION HOMEOWNERS ASSOCIATION, INC.
P.O. BOX 3060
PONTE VEDRA BEACH, FL 32004
PRIMARY EMAIL: RPPERRINE@PERRINELAW.NET
SECONDARY EMAIL: LINDA@PERRINELAW.NET

CHRISTOPHER D. MCGUIRE, ESQ.
ATTORNEY FOR FLORIDA HOUSING FINANCE CORPORATION
227 NORTH BRONOUGH ST, SUITE 5000
TALLAHASSEE, FL 32301
PRIMARY EMAIL: CHRIS.MCGUIRE@FLORIDAHOUSING.ORG
SECONDARY EMAIL: EFILING@FLORIDAHOUSING.ORG

ALISA D. WILKES, ESQ
13400 SUTTON PARK DRIVE SOUTH SUITE 1204
JACKSONVILLE, FL 32224
PRIMARY EMAIL: SERVICE@WILKESMEE.COM
SECONDARY EMAIL: ALISA@WILKESMEE.COM

IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT IN AND FOR DUVAL
COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO. 2018-CA-006291

U.S. BANK NATIONAL ASSOCIATION,
     Plaintiff,

vs.

UNKNOWN TRUSTEE OF THE 2212
SOTTERLEY LANE LAND TRUST;
UNKNOWN BENEFICIARIES OF THE
2212 SOTTERLEY LANE LAND TRUST;
KRISTEN SHEREE HAMPTON;
RODNEY ADAM HAMPTON;
PRITCHARD POINT PROPERTY
OWNERS ASSOCIATION, INC. F/K/A
PRITCHARD PLANTATION
HOMEOWNERS ASSOCIATION, INC;
FLORIDA HOUSING FINANCE
CORPORATION; SHORELINE HOAS,
LLC AS TRUSTEE OF THE 2212
SOTTERLEY LANE LAND TRUST,
     Defendant(s).

_____/

## VERIFIED AMENDED COMPLAINT FOR FORECLOSURE OF MORTGAGE

Plaintiff, U.S. BANK NATIONAL ASSOCIATION, sues the Defendants and alleges:

## COUNT I – MORTGAGE FORECLOSURE

1.    This is an action to foreclose a mortgage on real property in DUVAL County, Florida.

2.    The Court has jurisdiction over the subject matter.

3.    On August 29, 2008 RODNEY ADAM HAMPTON and KRISTEN SHEREE

HAMPTON executed and delivered a promissory note and a mortgage securing payment of the

note to DHI MORTGAGE COMPANY LTD. A copy of the note is attached hereto as Exhibit

"A". The Mortgage was recorded on September 18, 2008, in Official Records Book 14642, Page

18-185101

PAGE 1

158, of the Public Records of Duval County, Florida, and mortgaged the property described in the mortgage then owned by the Mortgagor(s).  A copy of the mortgage is attached hereto as Exhibit 'B'.

4.    The Plaintiff's Mortgage is a lien superior in dignity to any prior or subsequent right, title, claim, lien, or interest of any defendant in this action, including but not limited to, any interest arising out of Mortgagor(s) or Mortgagor(s)' predecessor(s) and/or successors in interest.

5.    Plaintiff is the holder of the original note secured by the mortgage.

6.    Defendant(s) have defaulted under the Note and Mortgage by failing to pay the payment due October 1, 2010, and all subsequent payments.

7.    Plaintiff declares the full amount payable under the Note and Mortgage to be due, except to the extent any part of that amount is or would be subject to a statute of limitations defense.

8.    Pursuant to the terms of the note and mortgage, and except for those Defendants who have been discharged in bankruptcy, Defendant(s) owe Plaintiff **$155,674.57** that is due and owing on principal on the Note and Mortgage, plus interest from and after September 1, 2010, and title search expenses for ascertaining necessary parties to this action.

9.    In order to protect its security, the Plaintiff may have advanced and paid Ad Valorem Taxes, premiums on insurance required by the Mortgage and other necessary costs, or may be required to make such advances during the pendency of this action.  Any such sum(s) so paid will also be due and owing pursuant to the terms of the note and mortgage.

10.    The property is now owned by Defendant(s) SHORELINE HOAS, LLC AS TRUSTEE OF THE 2212 SOTTERLEY LANE LAND TRUST who now hold(s) possession.

11.    All conditions precedent to the acceleration of this note and mortgage and to foreclosure of the mortgage have occurred, been satisfied or been waived.

12.    Plaintiff is obligated to pay its attorneys a reasonable fee for their services. Plaintiff is entitled to recover its attorneys' fees pursuant to the express terms of the Note and Mortgage.

13.    Plaintiff alleges that the claims of the remaining Defendants are secondary, junior, inferior and subject to the prior claim of Plaintiff.

14.    The Defendant, PRITCHARD POINT PROPERTY OWNERS ASSOCIATION, INC. F/K/A PRITCHARD PLANTATION HOMEOWNERS ASSOCIATION, INC., may claim some right, title, or interest in the property herein sought to be foreclosed by virtue of unpaid dues, liens and/or assessments. However, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

15.    Defendant, KRISTEN SHEREE HAMPTON, may claim some right, title, or interest in the property herein sought to be foreclosed by virtue of POTENTIAL INTEREST PURSUANT TO POTENTIALLY DEFECTIVE FORECLOSURE CASE NUMBER 16-2013-CA-005316-XXXX-MA of the Public Records of Duval County, Florida, and EXECUTION OF NOTE and EXECUTION OF MORTGAGE on September 18, 2008, in Official Records Book 14642, Page 158, of the Public Records of Duval County, Florida, or some other unknown interest, the exact nature of which is unknown to Plaintiff and not a matter of public record. However, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

16.    Defendant, RODNEY ADAM HAMPTON, may claim some right, title, or interest in the property herein sought to be foreclosed by virtue of POTENTIAL INTEREST PURSUANT TO POTENTIALLY DEFECTIVE FORECLOSURE CASE# 16-2013-CA-005316-XXXX-MA, of the Public Records of Duval County, Florida, and EXECUTION OF NOTE and EXECUTION OF MORTGAGE recorded on September 18, 2008, in Official Records Book 14642, Page 158, of the Public Records of Duval County, Florida, or some other unknown interest, the exact nature

of which is unknown to Plaintiff and not a matter of public record. However, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

17.    Any interest in the property inuring to the Defendant, FLORIDA HOUSING FINANCE CORPORATION, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, SECOND MORTGAGE recorded September 18, 2008, in Official Record Book 14642 at Page 170 of the Public Records of Duval County, Florida.

18.    Any interest in the property inuring to the Defendant, UNKNOWN BENEFICIARIES OF THE 2212 SOTTERLEY LANE LAND TRUST, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, CERTIFICATE OF TITLE recorded February 24, 2015, in Official Record Book 17075 at Page 1627 of the Public Records of Duval County, Florida.

        WHEREFORE, Plaintiff demands judgment foreclosing the mortgage, for costs (and, when applicable, attorneys' fees), and, if the proceeds of the sale are insufficient to pay Plaintiff's judgment, Plaintiff asks the court to reserve jurisdiction to determine whether a deficiency is appropriate, in the event it is sought. Subject to any applicable statute of limitations, Plaintiff further requests that the Court ascertain the amount due to Plaintiff for principal and interest on the Mortgage and Note, and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon. If the sums due Plaintiff under the Mortgage and Note are not paid immediately, Plaintiff requests that the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy the Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); and that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereinafter made a Defendant be forever barred and foreclosed. Plaintiff further requests, where applicable, that the Court appoint a receiver of the Property and of the rents,

issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency judgment decree, when and if such deficiency decree shall appear proper, provided Borrower(s) has/have not been discharged in bankruptcy. Finally, Plaintiff asks the Court to retain jurisdiction to resolve disputes that might arise with respect to assessments due or allegedly due to any Homeowners or Condominium Association, if applicable.

## VERIFICATION OF AMENDED COMPLAINT

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this 21st day of August, 2019.

By: _____
Print Name: Cynthia M. Aud
Title: Officer
Company: U.S. BANK NATIONAL
ASSOCIATION

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Plaintiff
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
Service Email: mail@rasflaw.com

By: _____
[ ] Melissa Konick, Esq., FL Bar No. 17569, Email Address: mkonick@rasflaw.com
[✓] Wendy Manswell, Esq., FL Bar No. 12027, Email Address: wmanswell@rasflaw.com

PAGE 5

State of Kentucky
County of Daviess

The foregoing instrument was subscribed and sworn to before me this 08/21/2019
(date), by Cynthia M. Aud, Officer   (name(s) and title(s) of authorized affiant(s)) of U.S.
Bank National Association, a federally chartered banking association, on behalf of
U.S. Bank National Association.

(signature of notary)                                    (seal)

State at Large
(title or rank)



## CERTIFICATE OF SERVICE

**I hereby certify that** a copy of the attached document has been furnished to the parties listed on the service list via Mail and/or E-mail in accordance with the corresponding addresses listed therein on this ___ day of ___August___, 2019.

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Plaintiff
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
Service Email: mail@rasflaw.com

By: _____
Kelly E. McGuire, Esquire
Florida Bar No. 28123
Communication Email: k.mcguire@rasflaw.com

Wendy Manswell, Esq.
FL Bar No. 12027

KRISTEN SHEREE HAMPTON
3199 CHESNUT RIDGE WAY
ORANGE PARK, FL 32065

RODNEY ADAM HAMPTON
3199 CHESTNUT RIDGE WAY
ORANGE PARK, FL 32065

UNKNOWN BENEFICIARIES OF THE 2212 SOTTERLEY LANE LAND TRUST
2212 SOTTERLEY LN
JACKSONVILLE, FL 32220

ROSANNE P. PERRINE, ESQ.
ATTORNEY FOR PRITCHARD POINT PROPERTY OWNERS ASSOCIATION, INC. F/K/A
PRITCHARD PLANTATION HOMEOWNERS ASSOCIATION, INC.
P.O. BOX 3060
PONTE VEDRA BEACH, FL 32004
PRIMARY EMAIL: RPPERRINE@PERRINELAW.NET
SECONDARY EMAIL: LINDA@PERRINELAW.NET

CHRISTOPHER D. MCGUIRE, ESQ.
ATTORNEY FOR FLORIDA HOUSING FINANCE CORPORATION
227 NORTH BRONOUGH ST, SUITE 5000
TALLAHASSEE, FL 32301
PRIMARY EMAIL: CHRIS.MCGUIRE@FLORIDAHOUSING.ORG
SECONDARY EMAIL: EFILING@FLORIDAHOUSING.ORG

PAGE 6

18-185101

ALISA D. WILKES, ESQ
13400 SUTTON PARK DRIVE SOUTH SUITE 1204
JACKSONVILLE, FL 32224
PRIMARY EMAIL: SERVICE@WILKESMEE.COM
SECONDARY EMAIL: ALISA@WILKESMEE.COM0

PAGE 7

18-185101

Florida

## NOTE

FHA Case No. [REDACTED]

August 29, 2008
[Date]
2212 Sotterley Lane, Jacksonville, FL 32220



EXHIBIT "A"

[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means DHI MORTGAGE COMPANY LTD

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred fifty-nine thousand seven hundred fifty-eight and 00/100

Dollars (U.S. $ 159,758.00       ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of six and sixty-five hundredth(s) percent (       6.650 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on October 1, 2008      . Any principal and interest remaining on the first day of September 1, 2038      , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at P.O. Box 911209, Dallas, TX 75391-1209
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,025.60       . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

FHA Florida Fixed Rate Note - 10/95

-1R(FL) (0404)01        Amended 10/98
VMP Mortgage Solutions, Inc. (800)521-7291

Page 1 of 3        Initials: _____



**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **four** percent ( **4.000** %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety

 

or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Rodney Adam Hampton                    -Borrower

_____ (Seal)
Kristen Sheree Hampton                   -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

PAY TO THE ORDER OF
U.S. Bank N.A.
WITHOUT RECOURSE
DHI MORTGAGE COMPANY LTD
BY: DHI MORTGAGE COMPANY GP, INC.
ITS GENERAL PARTNER
SUZANNE DELASHMIT, ASSISTANT SECRETARY

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

Pay to the order of                          [Sign Original Only]
_____
Without Recourse
U.S. Bank N.A.

Teresa Bulver
Vice President

Doc # 2008239257, OR BK 14642   Page 158,   Number Pages: 12,   Recorded
09/18/2008 at 10:01 AM, JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY RECORDING
$103.50

Return To:
DHI Mortgage Company
Post Closing Department
12357 Riata Trace Pkwy.
Suite C150
Austin, TX  78727

This document was prepared by:



**EXHIBIT "B"**

―――――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――――

State of Florida                    MORTGAGE                    | FHA Case No. |

MIN

THIS MORTGAGE ("Security Instrument") is given on August 29, 2008
The Mortgagor is Rodney Adam Hampton and
Kristen Sheree Hampton, husband and wife

, whose address is

2212 Sotterley Lane
Jacksonville, FL 32220
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. DHI MORTGAGE COMPANY LTD

("Lender") is organized and existing under the laws of Texas                              , and
has an address of 12357 Riata Trace Pkwy. Suite C150
Austin, TX  78727                              . Borrower owes Lender the principal sum of
one hundred fifty-nine thousand seven hundred fifty-eight and 00/100
                              Dollars (U.S. $159,758.00                   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2038        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the

FHA Florida Mortgage with MERS - 4/96
VMP-4N(FL) (0305)01          Amended 2/01
Page 1 of 9                  Initials: _____
VMP Mortgage Solutions, Inc.

This mortgage is exempt from taxation pursuant to sections 199.183,
420.513(1), Florida Statutes

successors and assigns of MERS, the following described property located in Duval

County, Florida:

Lot 3, of Pritchard Plantation - Phase 1, according to the Plat thereof, as
recorded in Plat Book 63, at Page 71 through 81, of the Public Records of Duval
County, Florida.

Parcel ID Number:
which has the address of  2212 Sotterley Lane                                                    [Street]
Jacksonville                                         [City], Florida  32220          [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this
Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's
successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right
to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or
canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these
items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

VMP-4N(FL) (9205)01                                          Page 2 of 9                                          Initials:

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either to (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

VMP®-4N(FL) (0305).01                    Page 5 of 9                    Initials: [illegible]

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

 -4N(FL) (0305).01                    Page 4 of 9                    Initials 

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

  (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

  (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

  (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

  (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

  (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

  **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.



VMP-4 N(FL) (9305)01

Page 5 of 9

Initials: 

OR BK 14642 PAGE 163

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's. Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

VMP-4N(FL) (0305)01                    Page 6 of 9                    Initials: KNH

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Growing Equity Rider       ☒ Other [specify]
☒ Planned Unit Development Rider  ☐ Graduated Payment Rider     TAX EXEMPT RIDER



VMP-4N(FL) (9805).01                    Page 7 of 8



Initials: ___

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                      Rodney Adam Hampton            -Borrower

_____     _____ (Seal)
Debbie Parker                         Kristen Sheree Hampton          -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                                     -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                                     -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                                     -Borrower

VMP-4N(FL) (0305).01                Page 6 of 8

**STATE OF FLORIDA,** Duval                                          County ss:

The foregoing instrument was acknowledged before me this      AUG **2 9** 2008      by
Rodney Adam Hampton & Kristen Sheree Hampton

who is personally known to me or who has produced   FL. D.L.
as identification.

_____
Notary Public

DEBORAH DUCKWORTH PARKER
Notary Public - State of Florida
My Commission Expires Aug 28, 2009
Commission # DD466408
Bonded By National Notary Assn.

-4 N(FL) (0205)01                                Page 9 of 9

OR BK 14642 PAGE 167

# PLANNED UNIT DEVELOPMENT RIDER

| FHA Case No. |
|---|
|  |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 29th _____ day of August, 2008 _____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to DHI MORTGAGE COMPANY LTD

("Lender") of the same date and covering the Property described in the Security Instrument and located at: 2212 Sotterley Lane, Jacksonville, FL 32220

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

Pritchard Plantation
[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless

FHA Multistate PUD Rider - 10/95
Wolters Kluwer Financial Services
VMP®-589U (0402).02
Page 1 of 2          Initials: _____

Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
Rodney Adam Hampton            -Borrower        Kristen Sheree Hampton         -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                       -Borrower

VMP&-689U (0402).02                            Page 2 of 2

## TAX EXEMPT FINANCING RIDER TO SECURITY INSTRUMENT

THIS TAX-EXEMPT FINANCING RIDER is made this 29th ___ day of August ___, 2008 ___, and is incorporated into and shall be deemed to amend and supplement the Mortgage or Security Deed ("Security Instrument") of the same date given by the undersigned ("Mortgagor") to secure Mortgagor's Note ("Note") to DHI Mortgage ___ ("Lender") of the same date and covering the property described in the Security Instrument and located at :

2212 SOTTERLEY LANE, JACKSONVILLE FL 32220

(Property Address)

In addition to the covenants and agreements made in the Security Instrument, Mortgagor and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may be separate instrument assume responsibility for assuring compliance by the Mortgagor with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if the loan is not paid in full and:

(a) all or part of the property is sold or otherwise transferred by Mortgagor to a purchaser or other transferee:

(i) who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Sections 143 (c) and (i) (2) of the Internal Revenue Code; or

(ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143 (d) and (i) (2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143 (d) (1); or

(iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i) (2) of the Internal Revenue Code; or

(iv) who has a gross family income in excess of the applicable percentage of applicable median family income, as provided in Section 143 (f) and (i) (2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the property described in the mortgage without the prior written consent of the Mortgagee or its successors or assigns described at the beginning of this addendum ;or

(c) Mortgagor omits or misrepresents a fact which is material with respect to the provisions of Section 143 of the Internal Revenue Code of 1986 in an application for this mortgage.

References are to the Internal Revenue Code as amended and in effect on the date of issuance of the Bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulations.

DATE: 8-29-2008

SIGNATURE OF MORTGAGOR ___

SIGNATURE OF MORTGAGOR ___